IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| TYLER JAMES LARSEN,<br><br>        Plaintiff,<br><br>vs.<br><br>DAVIS COUNTY, and the following in their official and individual capacity, TROY RAWLINGS, MELVIN MILES, BRET MILBURN, JOHN PETROFF, LOUENDA DOWNS, CLEVE DIBBLE, MARILYN OBERG, HOWARD RICHARDSEN, and currently unknown JOHN DOES 1-25,<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 1:13-cv-00068<br><br>Judge Clark Waddoups |

This lawsuit arises from Mr. Larsen's termination from employment as a Deputy Davis County Attorney for misconduct on September 8, 2010. Mr. Larsen's due process claims relating to his termination on this date were resolved against him by the April 3, 2014 decision of the Utah Court of Appeals, *Larsen v. Davis County*, 2014 UT App 74 (Utah Ct. App. 2014). Because the Court of Appeals decision only addressed the 2010 termination, on April 22, 2015, this court granted Mr. Larsen leave to file an amended complaint regarding his claims that defendants rehired him on August 16, 2011 and then improperly terminated his employment on April 25, 2013, and again on April 4, 2014. Based on his amended complaint, Mr. Larsen filed a Motion for Partial Summary Judgment on Count 1, the claim that his subsequent terminations were without due process pursuant to 42 U.S.C. § 1983. Defendants responded with a cross motion for

1

summary judgment on Counts I, II, and III, the only claims over which the court has federal jurisdiction. Defendants also requested dismissal of Mr. Larsen's state law claims. Thereafter, defendants moved to dismiss the amended complaint's conspiracy (Count II) and official capacity claims against them, which the court granted on November 13, 2015. Thus, the only claims before the court on the parties' cross-motions for summary judgment are Counts I (due process) and III (retaliation).

The court has carefully reviewed the motions and memoranda submitted by the parties. Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. *See* DUCivR 7-1(f). For the reasons below, the court DENIES plaintiff's motion for summary judgment on Count I (Dkt. No. 108), GRANTS summary judgment to defendants on Counts I and III (Dkt. No. 112), declines to exercise supplemental jurisdiction over plaintiff's state law claims, and dismisses the state law claims.

## BACKGROUND

The factual history of Tyler Larsen's original employment with the Davis County Attorney's Office and his September 8, 2010 termination have been described in detail in the Utah Court of Appeals decision in this matter and will not be repeated here. Relevant to the pending summary judgment motions, Mr. Larsen took the following actions immediately after his 2010 termination: first, he applied for unemployment benefits from the Utah Department of Workforce Services and second, he appealed his termination to the Davis County Career Service Council (the "CSC"). Mr. Larsen's initial claim for unemployment benefits was approved by the

Department of Workforce Services. Davis County did not file an appeal and Mr. Larsen received unemployment benefits until they were exhausted.

By contrast, Mr. Larsen's appeal of his termination to the CSC was unsuccessful, which led to his appeal of that decision to the Third Judicial District Court of Utah, Judge Deno Himonas, presiding. Although Judge Himonas ruled in favor of Mr. Larsen on August 16, 2011, nearly two and a half years later on April 3, 2014 the Utah Court of Appeals reversed Judge Himonas and affirmed the CSC's initial decision upholding Mr. Larsen's termination. The uncertain immediate practical effect of Judge Himonas's decision led to the events and actions that form the basis of Mr. Larsen's amended complaint.

Specifically, Mr. Larsen interpreted Judge Himonas's decision as a reinstatement to employee status, entitling him to back pay. The Davis County Attorney's Office was not as clear. Davis County Attorney Troy Rawlings wrote Mr. Larsen a lengthy letter on August 26, 2011 outlining the county's confusion about the meaning of the decision. By the end, without waiving any of the county's positions as to the ultimate merits of Mr. Larsen's 2010 termination on appeal or otherwise, the letter stated the county's intent to place Mr. Larsen on the same grade and pay he had while on paid administrative leave prior to his 2010 termination, and change his status from paid administrative leave to "return to work." The letter stated that the county reserved its decision as to whether it intended to immediately resume disciplinary proceedings against Mr. Larsen, but in the meantime, "meaningful" assignments were planned to begin on August 29, 2011. (Dkt. No. 108-1).

On August 27, 2011, Mr. Larsen essentially rejected the county's offer, stating that while "excited to return to county service," he felt the unresolved issue of back pay "impedes an

amicable return to work." (Dkt. No. 118-3). Because Mr. Larsen's response portended difficulties with the proposed "return to work" status, on August 29, 2011, Mr. Rawlings wrote another letter to Mr. Larsen stating that he would not be permitted to "return to work," but instead be placed on paid administrative leave pending appeal. (Dkt. No. 110-2). The county then prepared paperwork to activate Mr. Larsen's paid administrative leave effective August 16, 2011, the date of Judge Himonas's decision.

Mr. Larsen remained on paid administrative leave until April 25, 2013, at which time Mr. Rawlings notified Mr. Larsen that the county was "correcting and reversing" its decision to pay him pending the outcome of the appeal. Mr. Larsen filed a new claim for unemployment benefits with the Utah Department of Workforce Services, using wage credits from compensation paid while he was on administrative leave and from employment with a different employer. Mr. Larsen also characterized this notice as a new termination and appealed it to the CSC. Davis County filed an objection to the appeal, asserting that the CSC did not have jurisdiction to make additional rulings while the appeal of Judge Himonas's ruling on the CSC's prior decision was still pending.

On July 12, 2013, notwithstanding Davis County's objection to the CSC's jurisdiction, and noting that Judge Himonas's reversal of their prior ruling "weigh[ed] heavily on [their] decision," the CSC issued a *Ruling and Order* making factual findings that Mr. Larsen had been voluntarily reinstated to his employment in August 2011 and that his subsequent termination on April 25, 2013 was made without the required notice and opportunity to respond. (Dkt. No. 108-2). The CSC's decision required Davis County to place Mr. Larsen back on administrative leave and pay him back pay retroactive to April 25, 2013. (*Id.*). Thereafter, Mr. Larsen remained on

administrative leave until April 4, 2014, the day after the Utah Court of Appeals reversed Judge Himonas's decision and reaffirmed the CSC's original ruling that Mr. Larsen had received sufficient due process regarding his 2010 termination.

Following Mr. Larsen's final removal from Davis County's payroll, he again applied for unemployment benefits, which the Utah Department of Workforce Services awarded him. Davis County appealed the award to the Department of Workforce Services Appeals Unit. On July 8, 2014 Administrative Law Judge Heather Simonson concluded that she did not have jurisdiction to consider Davis County's appeal as from a new award of unemployment benefits, because this was not a new separation from the employer. Rather, the original separation of the employee from the employer occurred on September 24, 2010, and the initial decision to award unemployment benefits in 2010 had not been timely appealed within 15 days of that decision. She made specific findings of fact that "[t]he Claimant was discharged in 2010 and has not performed services since 2010," that "[t]here was not a new separation since 2010 only that the administrative leave pay had ended and the discharge was reinstated," and that "[t]he Department [of Workforce Services] in error [had] issued a new decision June 4, 2014, which listed that appeal rights were present." (Dkt. No. 110-2). She further concluded that "[t]he decision finding the Claimant [had been] discharged for the act of misconduct in 2010 was final," "[t]he Department [of Workforce Services] did not have jurisdiction to review the case and issue new appeal rights in April 2014 and June 2014," and that "[t]he 2010 decision allowing benefits based on the discharge remains in effect" because it was not appealed in a timely manner back in 2010. (*Id.*).

Mr. Larsen did not appeal this ruling, but Davis County did on July 23, 2014. Subsequent review by the Workforce Appeals Board resulted in Judge Simonson's factual findings being adopted in full. The Workforce Appeals Board clarified Judge Simonson's ruling that found that Davis County's 2014 appeal necessarily related back to the Department of Workforce Service's September 24, 2010 decision, because "[t]here was no new separation from this Employer and the Claimant did not provide services to this Employer between the original discharge in 2010 and the June 2014 decision." (Dkt. No. 108-3). The Workforce Appeals Board further "found that the Department's decisions of April 24 and June 4, 2014 [regarding appeal rights for benefit claims by Mr. Larsen] should not have found there was a new job separation from this Employer and set aside that portion of those decisions." (*Id.*). After affirming that Davis County only had the right to appeal from the Department of Workforce Service's September 24, 2010 decision, the Workforce Appeals Board affirmed Judge Simonson's findings that Davis County had not established "good cause for its late appeal of the September 24, 2010 decision," namely because Davis County had instead chosen to pursue other litigation regarding the matter. (*Id.*).

Although the Workforce Appeals Board ultimately concluded that state law authorized the Department of Workforce Services to charge Davis County for its share of Mr. Larsen's unemployment benefits, it noted that it was "such an unusual case" that it was "easy to see how the mistakes were made and difficult to see how to avoid them in the future." (*Id.*). Specifically, it stated that "each time the Employer started paying administrative leave, it sent notice to the Department that the Claimant was a new hire," and that failure to appeal earlier did not make it "clear to the Department [of Workforce Services] that the Claimant was not working for the Employer at the time the 2013 and 2014 claims were filed." (*Id.*). Rather, "[h]ad the Employer

6

appealed earlier, the Department would have understood the status of the payments made to the Claimant." (*Id.*). The Workforce Appeals Board decision was issued August 15, 2014.

Mr. Larsen also appealed the April 4, 2014 cessation of his administrative leave pay to the CSC. Davis County moved to dismiss his appeal based on the Utah Court of Appeals' April 3, 2014 decision affirming the CSC's original ruling that Mr. Larsen had received sufficient due process at the time he was terminated in 2010. On April 29, 2014, the CSC granted Mr. Larsen leave to file an opposition to Davis County's motion to dismiss, but at the same time it stated that after review of the Utah Court of Appeals' ruling, "the CSC believes that it has been divested of jurisdiction since its original Order affirming Davis County's decision to terminate Mr. Larsen's employment and deny his grievance. As such, any subsequent rulings made by the CSC would be rendered moot." (Dkt. No. 110-2). By so stating, the CSC acknowledged that its July 12, 2013 *Ruling and Order* was void for lack of jurisdiction. When briefing on Davis County's Motion to Dismiss was complete, the CSC granted the motion on June 18, 2014. It concluded that "the scope and breadth of the Utah Court of Appeals [decision] referenced herein deprives us of any jurisdiction to hear the most recent grievance filed by Tyler James Larsen." Mr. Larsen appealed this decision to the Third District Court and then improperly attempted to remove the proceeding to this court. This court remanded the CSC appeal to the Third District Court on November 13, 2015.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Both parties argue that Utah state administrative agencies have made all of the necessary factual findings in properly litigated proceedings where evidence was taken from both parties and each party was allowed to cross-examine the other. Specifically, the parties argue that the court's consideration of one crucial factual issue is dispositive of both parties' motions. That issue is whether Mr. Larsen was rehired to the position of Deputy Davis County Attorney following his September 8, 2010 termination. If he was, Davis County has not disputed that Mr. Larsen was not given notice and an opportunity to respond to the cessation of his administrative leave pay in 2013 and 2014, and Mr. Larsen would be entitled to summary judgment on Count I. If he was not rehired, Mr. Larsen was not entitled to due process when Davis County cancelled his administrative leave pay, nor could such cancellation support an employment-related retaliation claim, thus Davis County would be entitled to summary judgment on Counts I and III. For the dispositive factual findings, Mr. Larsen relies on the CSC decision of July 12, 2013 and the Workforce Appeals Board decision on August 15, 2014, whereas Davis County relies solely on the Workforce Appeals Board's decision.

## LEGAL PRINCIPLES

Before the court can conclude that there are no genuine disputes as to any material fact, it must first examine whether the factual findings made by the CSC and the Workforce Appeals Board are entitled to preclusive effect. The Supreme Court has stated that preclusion applies to the "fact-finding of administrative bodies acting in a judicial capacity" when "the parties have had an adequate opportunity to litigate." *University of Tennessee v. Elliott*, 478 U.S. 788, 797

(U.S. 1986). Three elements must be met for claim preclusion to apply: "First, both cases must involve the same parties or their privies. Second, the claim that is alleged to be barred must have been presented in the first suit or must be one that could and should have been raised in the first action. Third, the first suit must have resulted in a final judgment on the merits." *Miller v. USAA Cas. Ins. Co.*, 2002 UT 6, ¶ 58. Additionally, a fourth element applies under Utah law, namely, "preclusion is limited by state and federal principles of due process." *Nikols v. Chesnoff*, 435 Fed. Appx. 766 (10th Cir. 2011) (unpublished). In other words, fundamental requirements of due process must have been met in the original administrative proceeding for a claim to be precluded in a subsequent proceeding. *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481 (U.S. 1982). The court agrees with the parties that both the CSC and Workforce Appeals Board decisions made factual findings on the dispositive claim in this case—whether Mr. Larsen was rehired by Davis County following his 2010 termination. Therefore, the court must determine whether the factual findings made by each administrative agency require the court to give them preclusive effect. If so, the court will then apply the factual findings to each party's motion for summary judgment.

## ANALYSIS

### I. Preclusion

#### A. July 12, 2013 Factual Findings of the Career Services Council

The court first considers the factual findings made by the CSC on July 12, 2013. As previously stated by this court in its *Order Adopting in Part and Rejecting in Part Report and Recommendation*, (Dkt. No. 93), application of preclusion to the CSC's July 12, 2013 findings is not appropriate because the CSC did not have jurisdiction to make these findings while its 2010 ruling was on appeal. *Nebeker v. State Tax Comm'n*, 2001 UT 74, ¶ 23, 34 P.3d 180

9

("[A]pplication of [preclusion] presupposes the agency has jurisdiction to resolve the issue."). In fact, the CSC later repudiated its own July 12, 2013 factual findings as void for want of jurisdiction. On April 29, 2014, the CSC noted that "based on the Court of Appeals' ruling, the CSC believes that it has been divested of jurisdiction since its original Order affirming Davis County's decision to terminate Mr. Larsen's employment and deny his grievance. As such, any subsequent rulings made by the CSC would be rendered moot." (Dkt. No. 110-2, p. 16). Similarly, a second ruling made by the CSC on June 18, 2014 granted Davis County's Motion to Dismiss Mr. Larsen's appeal and stated that "[i]n our opinion, the scope and breadth of the Utah Court of Appeals [decision] referenced herein deprives us of any jurisdiction to hear the most recent grievance filed by Tyler James Larsen." (Dkt. No. 110-2, p. 20).

Furthermore, even if the CSC had had jurisdiction to make its July 12, 2013 findings, that decision would not be a final order for purposes of preclusion because each party is still seeking judicial review by the Third District Court. (Dkt. No. 122, p. 6). Mr. Larsen seeks review of the CSC's refusal to order payment of back pay and restore employment benefits, and Davis County seeks review of whether the CSC had jurisdiction. Given these pending appeals, the court can only conclude that the factual findings made by the CSC on July 12, 2013 are not yet final judgments on the merits.

Lack of jurisdiction and lack of finality are not the only problems preventing the court from relying on the CSC's factual findings to support Mr. Larsen's motion for partial summary judgment. It is also important that the July 12, 2013 CSC ruling as well as Mr. Larsen's affidavit in support of his motion for summary judgment all acknowledge that Davis County did not participate in the June 27, 2013 evidentiary hearing leading to the CSC's July 12, 2013 factual

findings. (Dkt. No. 108-2, p. 1; Dkt. No. 118-9, p. 4). Davis County did not participate because it believed the CSC lacked jurisdiction. Without Davis County's participation in the evidentiary hearing, the 2013 CSC findings upon which Mr. Larsen seeks to rely in his motion for partial summary judgment were made without the issues being "fairly litigated" and do not meet the due process requirements for them to have preclusive effect. *Kremer*, 456 U.S. at 481.

Finally, the CSC's actual factual finding on the critical issue before the court was that "Davis County voluntarily reinstated Mr. Larsen's employment in August 2011." (Dkt. No. 108-2, p. 3). There is evidence in the record, however, that the CSC was subsequently confused about the meaning of that finding, specifically whether it meant that Davis County could voluntarily rescind such a voluntary reinstatement, or whether a voluntary reinstatement represented the equivalent of a hiring that required termination subject to all due process requirements. (Dkt. No. 118-4, pp. 81-84). The CSC sought further briefing from the parties on that distinction. (*Id.*). This court cannot give an agency's fact-finding preclusive effect if a state court would not. *University of Tennessee v. Elliott*, 478 U.S. at 799 ("[W]hen a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' . . . federal courts must give the agency's fact-finding *the same preclusive effect to which it would be entitled in the State's courts*.") (emphasis added). If the agency itself was still unclear about what its finding meant, it is unlikely that a Utah court would hold said unclear finding as preclusive. For all of the foregoing reasons—lack of jurisdiction, lack of due process, lack of finality, and lack of clarity—the factual findings in the July 12, 2013 CSC ruling do not have preclusive effect in this court and cannot support Mr. Larsen's motion for summary judgment.

### B. Factual Findings of the August 15, 2014 Decision by the Workforce Appeals Board

The court next evaluates whether the factual findings made by the Workforce Appeals Board are entitled to preclusive effect as the court considers the parties' motions for summary judgment. Temporarily setting aside the problem that each party argues that this decision supports its position, the court determines that the first two elements of claim preclusion are met pursuant to *Miller*. First, both cases involve the same parties or their privies; and second, the key issue before this court (whether Mr. Larsen was rehired by Davis County in 2011 and 2013) is the key issue that was decided by the Workforce Appeals Board, primarily because it was determinative of whether new appeal rights were vested in Davis County. *See Miller*, 2002 UT 6 at ¶ 58. The third element of claim preclusion is also met, because the decision by the Workforce Appeals Board is a final order of a state administrative agency. *Id.* The finality of this order, which affirmed the findings of Administrative Law Judge Heather Simonson, results from neither party having appealed the Workforce Appeals Board's order to a Utah state court. Accordingly, the decision is a final administrative agency order. Mr. Larsen claims that he did not appeal the decision because it "was favorable to him." (Dkt. No. 119, p. 4). In fact, he asks the court to rely on this decision in support of his motion for summary judgment. (Dkt. No. 108, p. 8). While the court does not agree with Mr. Larsen about the application of the Workforce Appeals Board's final order, it does agree with Mr. Larsen that it is a final order upon which it must rely. Further, the court notes that where the opportunity for judicial review was available, a party cannot obstruct the preclusive use of a state administrative decision by foregoing the right to appeal. *Plaine v. McCabe*, 797 F.2d 713 (9th Cir. 1986).

Finally, the Workforce Appeals Board decision is entirely consistent with the requirements of due process; both parties had a full and fair opportunity to litigate its key issue. *See Crocog Co. v. Reeves*, 992 F.2d 267, 270 (10th Cir. 1993) (citing *Kremer*, 456 U.S. at 481). The decision reflects that the Workforce Appeals Board held a hearing at which testimony was taken. (Dkt. No. 108-3, p. 2). Neither party alleges that there were any procedural limitations in the proceedings, or that either party lacked an incentive to fully litigate the key issue. *See Burrell v. Armijo*, 456 F.3d 1159, 1172 (10th Cir. 2006) (stating that the inquiry into a "full and fair opportunity to litigate an issue" includes evaluation of any "significant procedural limitations" and whether a party had an incentive to fully litigate the issue). Mr. Larsen specifically states that the "issues were properly litigated before administrative agencies who took evidence from both parties, allowed each party to cross-examine the other party and issued written decisions." (Dkt. No. 108, p. 9). Therefore, because the Workforce Appeals Board decision meets each of the elements for claim preclusion, in addition to satisfying the requirements of due process, the court concludes that it is required to give preclusive effect to the factual findings in the August 15, 2014 Workforce Appeals Board decision.

## II.   Application of Factual Findings to Summary Judgment Motions

Having determined that the factual findings made by the Workforce Appeals Board have preclusive effect, the court applies those findings to the issues raised by the motions for summary judgment. The Workforce Appeals Board "adopt[ed] in full the factual findings of the Administrative Law Judge." (Dkt. No. 108-3, p. 1). Those findings included:

1. The Utah Department of Workforce Services unemployment benefits decision was sent to the employer (Davis County) on September 24, 2010, which provided a right

    to appeal on or before October 11, 2010 unless "good cause for the late filing can be established."

2. Davis County "received the decision in 2010 and chose not to appeal because it was pursuing litigation in other forums."

3. Mr. Larsen "was discharged in 2010 and has not performed services since 2010."

4. Mr. Larsen "was on paid administrative leave August 29, 2011, April 28, 2013, through July 2013 through April 6, 2014."

5. Davis County "reinstated the discharge in April 2014, for the same reasons" Mr. Larsen "was discharge[d] in 2010." Mr. Larsen thereafter "filed for benefits."

6. The Utah Department of Workforce Services "made a decision on April 24, 2014," finding that Mr. Larsen "was discharged without just cause" and charging Davis County "on a future unemployment benefit claim."

7. Davis County "chose not to appeal at that time."

8. "There was not a new separation since 2010 only that the administrative leave pay had ended and the discharge was reinstated."

9. Davis County appealed on June 19, 2014, following an erroneous decision by the Utah Department of Workforce Services on June 4, 2014, "which listed that appeal rights were present."

Findings of Fact in Administrative Law Judge's July 8, 2014 Decision adopted by Workforce Appeals Board (Dkt. No. 110-2, pp. 25-27).

    In light of these findings, the court concludes, as did Davis County, that the factual findings that "[t]here was not a new separation since 2010," and that Mr. Larsen "was discharged

in 2010 and has not performed services since 2010" are determinative of whether Mr. Larsen was rehired by Davis County at any time following his September 8, 2010 discharge. The Workforce Appeals Board factually ruled that he was not. Because these findings have preclusive effect, there is no genuine dispute as to any material fact and Davis County is entitled to judgment as a matter of law. "It is not within the jurisdiction of federal courts to review the administrative decisions of state agencies." *Bush v. Real Estate Comm'n*, 13 F.3d 404, 1993 U.S. App. LEXIS 33484 (10th Cir. 1993) (unpublished); *Chicago, R.I. & P.R. Co. v. Stude*, 346 U.S. 574, 581 (1954). Based upon its findings that Mr. Larsen was not rehired following his 2010 termination, the Workforce Appeals Board concluded that the April 24, 2014 and June 4, 2014 decisions of the Utah Department of Workforce Services "should not have found there was a new job separation from this Employer" and, accordingly, "set aside that portion of those decisions." (Dkt. No. 108-3, p. 2).

The Workforce Appeals Board decision explained that the Department of Workforce Services' prior erroneous rulings occurred because "each time the Employer started paying administrative leave, it sent notice to the Department that the Claimant was a new hire," and that [b]ecause the Employer was reporting the Claimant as a new hire, the Department believed there must have been a new separation." (Dkt. No. 108-3, p. 5). Mr. Larsen argues that this explanation for the Department of Workforce Services' mistake is undisputed evidence that Davis County hired or rehired him. (Dkt. No. 119, pp. 8-9). This argument fails because the Workforce Appeals Board rejected the argument when it made factual findings that notwithstanding the "new hire" reports it received from Davis County whenever Davis County placed Mr. Larsen on administrative leave pay, Mr. Larsen "was discharged in 2010 and has not

Case 1:13-cv-00068-CW   Document 127   Filed 06/08/16   Page 16 of 17

performed services since 2010" and "[t]here was not a new separation since 2010." (Dkt. No. 110-2, p. 26). Again, this court has no discretion to review these findings or the underlying evidence Mr. Larsen presents as a collateral attack on the Workforce Appeals Board's decision, because the state administrative agency findings on this dispositive issue have preclusive effect.

Mr. Larsen also argues that the Workforce Appeals Board's decision is not a "holding on the merits of the Plaintiff's rehire" because its decision was merely a legal conclusion that it "lacked subject matter jurisdiction to hear" Davis County's June 4, 2014 appeal. (Dkt. No. 118, p. 2). Mr. Larsen fails to appreciate, however, that the factual basis for the Workforce Appeals Board reaching its jurisdictional conclusion was its ruling on the merits of whether he was rehired by Davis County following his September 8, 2010 termination.

Because the Workforce Appeals Board has conclusively established that Mr. Larsen was not rehired and did no work for Davis County following his termination on September 8, 2010, Davis County's cancellation of his paid administrative leave without notice and a hearing was not a violation of Mr. Larsen's civil rights as alleged in Count 1 of Mr. Larsen's Amended Complaint. Similarly, because Mr. Larsen was not rehired after his September 8, 2010 termination, Davis County's cancellation of his administrative leave pay cannot constitute adverse and illegal employment actions as alleged in his Count III retaliation claim.

## CONCLUSION

For the foregoing reasons, the court DENIES Mr. Larsen's partial motion for summary judgment (Dkt. No. 108), GRANTS Davis County's motion for summary judgment (Dkt. No. 112), declines to exercise supplemental jurisdiction over Mr. Larsen's state law claims, and

dismisses the state law claims. The Clerk of Court is instructed to enter judgment in this matter. The case is closed.

      DATED this 8th day of June, 2016.

                              BY THE COURT:

                              Clark Waddoups
                              United States District Court Judge